**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-40475

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESUS GUTIERREZ RIVERA,
also known as Domingo Gaona,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

(M-95-CR-21-1)

June 20, 1997

Before JONES, STEWART, and DENNIS Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Appellant Jesus Guitierrez Rivera ("Rivera") appeals his convictions for possession of counterfeit currency in violation of 18 U.S.C. § 472, and possession of a firearm by a convicted felon pursuant to 18 U.S.C §§ 922(g) and 924 (a).  For the following reasons, we affirm.

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

## FACTS AND PROCEDURAL HISTORY

In a two-count indictment, Rivera was charged with possession of counterfeit currency ("Count I")[1] and possession of a firearm by a convicted felon ("Count II")[2]. Rivera pled guilty to Count I pursuant to a plea agreement. As a part of the plea agreement, the Government recommended that Count II be dismissed. The court reminded Rivera that it was not required to accept the guilty plea. As a factual prerequisite to the court's acceptance of the guilty plea, Rivera acknowledged that he had given his wife a $50 bill that he knew was counterfeit for the purpose of buying beer. A series of sentencing proceedings followed.

On June 1, 1995, Rivera appeared for sentencing before the district court. The court stated that it would hold Rivera accountable for his possession of the firearm, as charged in Count II of the indictment through the "relevant conduct" guideline, U.S.S.G. § 1B1.3.[3] According to Rivera's Presentence Report ("PSR"), Rivera was in possession of a pistol at the same time he was handling the counterfeit currency. After the Probation Officer stated that the counterfeit possession guideline,

---

[1] Possession of counterfeit currency in violation of 18 U.S.C. § 472 is punishable by up to 15 years in prison and/or a $250,000 fine.

[2] 18 U.S.C. §§ 922(g)(1) and 924 (a)(2) provide that a felon in possession of a firearm is subject to imprisonment of a term not to exceed ten years and/or a fine of $250,000, and a $50 special assessment.

[3] U.S.S.G 1B1.3, in pertinent part, provides, "Unless otherwise specified . . . specific offense characteristics . . . shall be determined on the basis of . . . all acts and omission committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . all harm that resulted from the acts and omissions . . . and all harm that was the object of such acts and omissions."

§ 2B5.1, included no specific offense characteristic[4] for firearm possession, the court instructed the Probation Officer to contact the Sentencing Commission to inquire whether "under the fact situation here they think this is something [to which the] relevant conduct guideline applies."

On June 9, 1995, at the second sentencing proceeding, the court stated that the "Probation Office came right back with exactly what they told me" during the first hearing.[5] Six days later, the court again continued the proceeding because the lead Assistant U.S. Attorney was not present.

On June 30, 1995, the parties convened for a fourth sentencing proceeding. By this time, the court learned for the first time that the day Rivera was arrested for the counterfeit offense, he had shot a fellow patron at a bar. Because this news purportedly complicated matters concerning Rivera's plea agreement--e.g., his willingness to accept responsibility under § 3E1.1[6] -- the court again continued the hearing to allow Rivera to confer with his attorney.

At a hearing on August 9, 1995, the court advised that "it cannot follow the plea agreement" and that it would allow Rivera to withdraw his guilty plea.[7] The parties met again on November 20, 1995. Although the court asserted that it would "not have the second count dismissed," Rivera refused to withdraw his guilty plea. By that time, Rivera and the Government had reached a second plea agreement by which Rivera would also plead guilty to Count II. Noting that Rivera had been

---

[4] Effective November 1, 1995, § 2B5.1 was amended to include an additional specific offense characteristic for possession of a "dangerous weapon" during the offense. See U.S.S.G. App. C, Amendment 513.

[5] The court evidently believed that under 1B1.3, it should be able to group Count II with Count I in some manner for determining Rivera's base offense level for the counterfeiting offense.

[6] U.S.S.G 3E1.1, in pertinent part, provides "if the defendant clearly demonstrates acceptance of responsibility for his offenses, decrease level by 2 levels."

[7] Apparently, there is no transcript of this hearing. The government does not reference this hearing in its brief nor does it acknowledge that this hearing occurred.

convicted of several felonies and had engaged in other violent conduct, the court announced its intention to enter an upward departure because Rivera's criminal history score underrepresented his violent past. The hearing was once again continued so that Rivera's attorney could consult with the attorney representing Rivera on pending state criminal charges.[8]

On March 25, 1996, Rivera announced his desire to be rearraigned on Count II. Pursuant to a written plea agreement, Rivera pleaded guilty to both counts on the next day. As part of the agreement, the Government recommended that Rivera be given the maximum benefit of the acceptance of responsibility guideline and that he be sentenced at the bottom of the guideline range. The Government also recommended that the Court impose concurrent sentences for Counts I and II. The court advised Rivera that it was not required to follow the Government's recommendation.

The Probation Office made the following sentencing recommendations: Rivera's base offense levels for the counterfeit-possession and the firearm-possession offenses were 9 and 14, respectively. His combined adjusted offense level was 15. Rivera was entitled to a two-level reduction for acceptance of responsibility, resulting in a total offense level of 13. The Probation Office also noted that despite Rivera's numerous convictions, prior arrests, and pending charges involving violent conduct, his criminal history computed only to Category II. The result was a guideline imprisonment range of 15 to 21 months. The Probation Office did not indicate to the court that Rivera's pending criminal charges suggested that his criminal history score underrepresented his past criminal conduct

---

[8] According to the PSR, Rivera had charges pending in 1994 for attempted murder; 1993 for aggravated assault stemming from stabbing his wife and public intoxication; in 1989 for possession in Ohio, as well as absconsion from an Ohio work release center; and in 1988 for domestic violence where it was reported that Rivera beat and kicked his wife and daughter (Ohio).

and warranted an upward departure. Rivera objected to the suggestion by the court that an upward departure was appropriate.

After the court again postponed sentencing due to confusion relating to credit for time served in state custody, Rivera was sentenced on May 1, 1996. Rivera made no further objections at that time. The court adopted the sentencing guideline range of 15 to 21 months, as reported in the PSR. However, after ruling that an upward departure was warranted based on the numerous incidents of violent conduct by Rivera that were detailed in his PSR, the court sentenced Rivera to 60 months' imprisonment and a three-year supervised release term. Rivera timely filed notice of appeal.

## DISCUSSION

On appeal, Rivera argues that the district court abused its discretion in applying an upward departure after it concluded that Rivera's criminal history category was inadequate; the district court violated the constitutional requirement of separation of powers by contacting the sentencing Commission as to the propriety of a particular sentence and then rejecting the recommendation of the Probation Officer based upon the Sentencing Commission's response; and the district court violated Fed. R. Crim. P. 11(e) by participating in the discussions between the Government and Rivera about the plea agreement(s).

## I.      VALIDITY OF TRIAL COURT'S UPWARD DEPARTURE

We review  the district court's decision to depart upward for an abuse of discretion. *United States v. Route*, 104 F.3d 59 (5th Cir. 1997) *(citing United States v. Ashburn*, 38 F.3d 803, 807 (5th Cir. 1994) (en banc), *cert. denied*, ____ U.S. ____, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995)). The district court has wide discretion in determining the extent of upward departure, and we will affirm

an upward departure if (1) the court gives acceptable reasons for departing and (2) the extent of the departure is reasonable. *United States v. Route*, 104 F.3d 59, 64 (5th Cir. 1997) (citing *United States v. Hawkins*, 87 F.3d 722, 728 (5th Cir. 1996), *cert. denied*, ___ U.S. ___ , 115 S.Ct. 408, 136 L.Ed.2d 321 (1996).

Rivera contends that the district court abused its discretion by failing to follow the procedures governing an upward departure from the sentencing guidelines. More specifically, Rivera argues that when the district court is deciding to upwardly depart, U.S.S.G. 4A1.3, requires it to first consider adjusting the defendant's criminal history category to the next higher category, thus taking into account an intermediate criminal history category as a possible sentence. Moreover, the district court must state for the record that it has contemplated the intermediate category, explain why the criminal history category as calculated under the guidelines is inappropriate, and then explain why the category the court utilizes is appropriate.

As a general rule, "a district court is not . . . a slave to the guideline grids; it may depart upward or downward from the sentence range specified by the guidelines when it finds 'an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *United States v. Lambert*, 984 F.2d 658, 660 (5th Cir. 1993).

In *Lambert*, the defendant pled guilty to escaping from a federal halfway house. In its pre-sentence report ("PSR"), the probation department suggested that the defendant's sentence might deserve an upward departure from the guidelines range because his criminal history category tended to understate the seriousness of his criminal history or potential for recidivism. Following the

6

recommendation in the PSR, the district court sentenced the defendant to 36 months' imprisonment, twice the maximum term allowed under the sentencing guideline. On appeal, we held that a district court considering upward departure based upon the failure of a criminal history score to adequately reflect a defendant's history must evaluate sentence ranges for each criminal history category above defendant's assigned category and explain why it chose that particular sentencing range rather than the sentencing range associated with the lower criminal history score. 984 F.2d at 662. However, we also stated that "we do not . . . require the district court to go through a ritualistic exercise in which it mechanically discusses each criminal history category it rejects en route to the category it selects." *Id*. at 663. In reaching this conclusion, we acknowledged that the "district court's reasons for rejecting intermediate categories will clearly be implicit, if not explicit, in the court's explanation for its departure from the category calculated under the guidelines and its explanation for the category it has chosen appropriate." *Id*. Thus, though we embraced a specific procedure for use in upward departure, we also stated that failure to strictly comply with that procedure will not be penalized by this court.

Furthermore, in *United States v. McKenzie*, 991 F.2d 203 (5th Cir. 1993),[9] we found that the district court did not abuse its discretion and adequately stated its reasons for upward departure

---

[9] In *McKenzie*, 991 F.2d at 203, the probation officer calculated the defendant's criminal history category to be a Category IV and the total offense level to be 14, thus yielding a sentencing range of 27 to 33 months' imprisonment. However, the PSR also referred to other criminal conduct by the defendant that had not been adjudicated and was not part of his criminal history score. The PSR included a dismissed charge of possession of a weapon, a charge of possession of cocaine with the intent to deliver, as well as pending charges of possession of marijuana with intent to sell, possession of a controlled dangerous substance, and conspiracy, possession, possession with the intent to distribute, and distributing a controlled dangerous substance. Neither party objected to the PSR. At the sentencing hearing, the district court concluded that McKenzie's criminal history score inadequately reflected his past criminal behavior and likely recidivism and imposed a sentence of 60 months' imprisonment.

when it restated the defendant's criminal history as contained in his PSR.[10]  *Id*. at 205-06.  In that case, we noted that although the district court's rationale for departing could have been more explicit, we were satisfied that the court's stated reasons, when read in light of the record as a whole, "presents a basis upon which we may reasonably conclude that the district court thoroughly considered the appropriate guidelines in arriving at its ultimate sentence." *Id*.  at 205.  We concluded that " it is not clear what else the court could have said to explain its sentence other than to repeat the various factors in the defendant's criminal history for which the guidelines did not account." *Id*. *See also United States v. Ashburn*, 38 F.3d 803 (5th Cir. 1994) (en banc), *cert. denied*, ___ U.S. ____, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995).

After several futile attempts to resolve Rivera's sentencing dilemma which lasted for more than one year, the district court announced its intention to depart upward on August 9, 1995.  Rivera, however, was not sentenced until May 1, 1996.  In articulating the reasons for its upward departure, the district court observed that Rivera's past was far more violent than the two offenses listed in Rivera's PSR indicated.  The court noted that Rivera's PSR also included several episodes of violent conduct including a 1979 incident where Rivera shot a man in the face resulting in a conviction of assault with the intent to murder; his entering a junior high school in 1987 and "grab[bing]" juveniles and the principal; and a 1989 conviction for resisting arrest.  The court also noted that various

---

[10]  The court stated, in pertinent part, "Mr. McKenzie, the court has reviewed this presentence report and the record in this case.  The court has also looked again at the provisions of Section 4A1.3 of the sentencing guidelines. And the court is of the view that your criminal record in the past does not accurately reflect or reflected in the guideline sentence as it's calculated in the standard method here, that is, that the criminal history category that was given you here based, on these normal, standard calculations doesn't adequately reflect and give credit for your past criminal conduct.  The court is of the view that based on your history, criminal history as set out in the presentence report that there is a very good likelihood that you will commit other offenses if you're not appropriately punished here.  And the court is of the view that term is a very good likelihood that you will commit other offenses if you are not appropriately punished here.  And the court is of the view that your criminal conduct is certainly more proportional to a higher category -- criminal history category, that is, a category 5 or 6 than the one that is contained in the basis calculations."

criminal charges were pending against Rivera including an aggravated-assault incident in 1993 where Rivera allegedly stabbed his wife; another resisting arrest incident in 1993; and Rivera's alleged shooting of a fellow bar patron on the day he was arrested for the offenses charged in the instant case.

> In deciding to depart, the court stated:
>
> This is a man with a very violent past here. Because of the nature of the way the guidelines are written with regards to prior convictions, the guidelines can't go as high as they should based u[pon] this fact situation. And as far as this court is con[cerned], based on the nature of the offense here, . . . the possession of a weapon that fits the description of the weapon that was used, allegedly used the same night to shoot at an individual and seriously wound and possibly could have killed [sic] him.
>
>    . . . .
>
> The court has looked at its options here with regards to departures. The guidelines that would apply, the criminal history that might apply here, and the nature of the repeated types of violations here, and the Court is going to go ahead and depart, and the Court is going to depart to a sentence of five years in this case.
>
> I've considered all of the options, the applicable guidelines here, and I consider this the appropriate departure here. That's still giving him the benefit of the doubt for the fact that he has not been convicted for some of these charges. But his behavior and the type of offense involved in this case and his prior record lead this Court to believe that it has to depart and it has to impose this sentence.

Despite the district court's failure to adhere strictly to the procedure provided for in *Lambert* and explicitly announce its step by step consideration of each of the intermediate steps, no error occurred. The state of the record in this case allows us to firmly conclude that the court rejected the intermediate steps between the recommended sentencing range of 15-21 months and the 60 months' imprisonment imposed by the court because they inadequately reflected Rivera's criminal history, pending charges, and propensity for violent conduct. As we stated in *Lambert*, we will not place the district courts in a state of servitude and bind them to a step-by-step analysis for upward departure.

9

We conclude that based upon the unique circumstances presented by this record, the district court did not abuse its discretion in departing upward and sentencing Rivera to 60 months' imprisonment, a sentence which is still far below the statutory maximum sentence of 180 months.

## II.    SEPARATION OF POWERS

We generally review a defendant's constitutional challenges de novo. *See, e.g., United States v. Grandlund*, 71 F.3d 507, 509 (5th Cir. 1995) (challenging verdict under Confrontation Clause) *cert. denied*, 116 S. Ct. 1031 (1996).; *United States v. Holley*, 23 F.3d 902, 914 (5th Cir. 1994) (challenging legality of restitution), *cert. denied*, 115 S.Ct. 635 (1994).  However, we also note that parties are required to challenge constitutional error in the district court.  When a defendant in a criminal case fails to object to a perceived error, he forfeits that error and this court's ability to remedy that error will be reserved for only the most exceptional cases.  *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir. 1994) (en banc), *cert. denied*, 115 S. Ct. 1266 (1995).

Under Fed. R. Crim. P. 52(b), this court may correct forfeited errors only when the appellant shows that (1) there is an error, (2) that it is clear and obvious, and (3) that the error affects the defendant's substantial rights.  *Calverley*, 37 F.3d at 162-64.  If these factors are established, the decision to correct the forfeited error is within the sound discretion of the court, which will not exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *United States v. Olano*, 507 U.S. at 725,  735-36 (1993).

Rivera contends, for the first time on appeal,  that the district court committed constitutional error  by "handing over its Article III discretion to the Sentencing Commission" when it instructed the probation officer to contact the Sentencing Commission regarding the interpretation of the relevant conduct guideline and its application to Count II.  Rivera argues this violation of the

10

constitutional doctrine of separation of powers constitutes a "structural defect" that requires automatic reversal. We disagree.

Rivera has not sustained his burden of proof under *Olano* to show that there is actually an error, thus our consideration of his argument can be brief. Rivera's separation of powers claim is factually baseless. The record belies his contention that the district court relied on the Sentencing Commission's advice. The court's request that the probation office contact the Commission occurred early in the many sentencing proceedings held in this case and concerned the court's inclination to hold Rivera responsible for his firearm possession under the "relevant conduct" guideline. In due course, the court abandoned its inquiry, refused to dismiss the firearm count, and rejected Rivera's plea agreement. Ultimately, the court's decision to depart upward rested on its determination that the recommended guideline range did not adequately account for Rivera's criminal history and propensity for violence. Because the district court's sentencing decision did not relate to the Sentencing Commission inquiry, there was no error, plain or otherwise. Rivera's argument that the district court abrogated its Article III sentencing discretion in favor of the Sentencing Commission is meritless.

## III. DISTRICT COURT'S PARTICIPATION IN PLEA DISCUSSION

Rivera alleges that the district court violated Fed. R. Crim. P. 11(e) by participating in plea negotiations. He asserts that the court "indicated over a number of sentencing hearings that it desired a plea agreement that allowed it to impose [a] more severe punishment on the basis of the firearm offense that was to have been dismissed." Moreover, Rivera contends that the court "virtually told [the parties] the plea agreement it desired when it posed in open court a number of questions for the prosecution to answer about why it had not pursued the firearm charge." Based upon these

11

allegations, Rivera argues that his "substantial rights" were affected in that he received a conviction for a second felony and a higher sentence.

Generally, we review the procedures articulated in Rule 11 of the Federal Rules of Criminal Procedure under the harmless error standard. *United States v. Watch*, 7 F.3d 422, 428 (5th Cir. 1993) (*citing United States v. Johnson*, 1 F.3d 296 (5th Cir. 1993) (en banc)). We have held that "no failure in the plea colloquy -- regardless of whether it might be one of omission or commission, total or partial, core or non-core -- will mandate an automatic reversal of a conviction or a vacatur of a sentence. Rather, reversal and vacatur will be required when -- but only when -- the challenged 'variance from the procedures required by [Rule 11] . . . affect[s] substantial rights' of the defendant." *Id*. However, since Rivera raises the claim that the district court violated Rule 11(e) for the first time on appeal, the claim is subject to plain error review. *See Calverley*, 37 F.3d at 162.

Rule 11(e) provides that the attorney for the government and the attorney for the defendant, or the defendant himself when acting pro se, may engage in discussions with a view towards reaching a plea agreement. Under the rule, "the court shall not participate in . . . [plea negotiation] discussions. Thus, under Rule 11(e), a district court is free to reject a plea agreement and may express its reasons for doing so. *United States v. Gustus*, 10 F.3d 1135, 1139 (5th Cir. 1993). But it is absolutely prohibited from "all forms of judicial participation in or interference with the negotiation plea process." *Id*.

In the instant case, Rivera contends that his substantial rights were affected by virtue of the district court questioning the government about its failure to pursue the firearm charge. According to Rivera, the district court "told defense counsel and the prosecutor the plea agreement it desired."

12

However, after a thorough review of the record, we find no evidence in support of Rivera's contention. Accordingly, we reject this argument.

For the foregoing reasons, we AFFIRM.